No. 25-30305

# In the United States Court of Appeals for the Fifth Circuit

LOCAL 1374, JEFFERSON PARISH FIREFIGHTERS ASSOCIATION,
*Plaintiff-Appellee,*

v.

LAKOSHIA R. ROBERTS, IN HER OFFICIAL CAPACITY AS CHAIRWOMAN OF THE LOUISIANA BOARD OF ETHICS; JOSE I. LAVASTIDA, REVERAND, IN HIS OFFICIIAL CAPACITY AS VICE CHAIRMAN OF THE LOUISIANA BOARD OF ETHICS; ANNE P. BANOS, IN HER OFFICIAL CAPACITY AS BOARD MEMBER OF THE LOUISIANA BOARD OF ETHICS; CAMILLE R. BRYANT, IN HER OFFICIAL CAPACITY AS BOARD MEMBER OF THE LOUISIANA BOARD OF ETHICS; PAUL HARVEY COLOMB, IN HIS OFFICIAL CAPACITY AS BOARD MEMBER OF THE LOUISIANA BOARD OF ETHICS; SARAH S. COUVILLON, IN HER OFFICIAL CAPACITY AS BOARD MEMBER OF THE LOUISIANA BOARD OF ETHICS; MARK A. ELLIS, IN HIS OFFICIAL CAPACITY AS BOARD MEMBER OF THE LOUISIANA BOARD OF ETHICS; WILLIAM D. GRIMLEY, IN HIS OFFICIAL CAPACITY AS BOARD MEMBER OF THE LOUISIANA BOARD OF ETHICS, ALSO KNOWN AS BILL GRIMLEY; JACQUELINE A. SCOTT, IN HER OFFICIAL CAPACITY AS BOARD MEMBER OF THE LOUISIANA BOARD OF ETHICS; ALFRED W. SPEER, IN HIS OFFICIAL CAPACITY AS BOARD MEMBER OF THE LOUISIANA BOARD OF ETHICS,
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:24-cv-2139, Hon. Wendy B. Vitter

---

**APPELLANTS' OPENING BRIEF**

---

ELIZABETH B. MURRILL
Attorney General of Louisiana

OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 428-7432
FairclothZ@ag.louisiana.gov
SmithKel@ag.louisiana.gov

J. BENJAMIN AGUIÑAGA
Solicitor General

ZACHARY FAIRCLOTH
Principal Deputy Solicitor General

KELSEY L. SMITH
Deputy Solicitor General

*Counsel for Defendants-Appellants*

## CERTIFICATE OF INTERESTED PERSONS

A certificate of interested persons is not required here because, under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants—as "governmental" parties—need not furnish a certificate of interested persons.

*/s/ Kelsey L. Smith*
KELSEY L. SMITH

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants respectfully request oral argument. This appeal presents intertwined abstention and First Amendment issues of public importance, and argument will materially aid the Court's resolution.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................i

STATEMENT REGARDING ORAL ARGUMENT ...................................ii

TABLE OF CONTENTS ..................................................................ii

TABLE OF AUTHORITIES..............................................................iv

INTRODUCTION........................................................................... 1

JURISDICTIONAL STATEMENT .....................................................5

ISSUES PRESENTED .....................................................................6

STATEMENT OF THE CASE ...........................................................7

SUMMARY OF THE ARGUMENT ...................................................19

STANDARD OF REVIEW...............................................................21

ARGUMENT ...............................................................................23

   I. THE UNION IS NOT LIKELY TO SUCCEED ON THE MERITS................23

      A. The District Court Abused Its Direction By Not Abstaining.....24

         1. This is a textbook case for *Pullman* abstention. ...................25

         2. This case falls squarely within *Younger*'s core......................33

      B. The Union's First Amendment Claim Is Unlikely to Succeed, and the District Court's Contrary Holding Was Profoundly Wrong. ..................................................................................39

         1. The First Amendment framework. ......................................39

2.  Regulation is permissible if it furthers a compelling interest and is drawn with narrow specificity. ........................ 43

3.  The declaratory opinion addresses a concrete, narrowly defined ethics conflict and advances compelling State interests. .............................................................................. 45

II. THE REMAINING FACTORS FAVOR A STAY. .......................................... 54

CONCLUSION ..................................................................................... 58

CERTIFICATE OF SERVICE ................................................................... 59

CERTIFICATE OF COMPLIANCE ............................................................ 60

# TABLE OF AUTHORITIES

**Cases**

*Americans for Prosperity Found. v. Bonta,*
　594 U.S. 595 (2021) ................................................................ 40

*Apple Barrel Prods., Inc. v. Beard,*
　730 F.2d 384 (5th Cir. 1984) .................................................. 22

*Augustine v. Avoyelles Par. Police Jury,*
　No. CIV.A. 06-1662-A, 2007 WL 3231718 (W.D. La. Oct. 30, 2007) ... 47

*Baran v. Port of Beaumont Nav. Dist.,*
　57 F.3d 436 (5th Cir. 1995) .................................................... 25

*Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar,*
　377 U.S. 1 (1964) ............................................... 41, 44, 45, 49

*Bice v. La. Pub. Def. Bd.,*
　677 F.3d 712 (5th Cir. 2012) .................................................. 34

*Boy Scouts of Am. v. Dale,*
　530 U.S. 640 (2000) ............................................................... 40

*Buckley v. Valeo,*
　424 U.S. 1 (1976) ................................................................... 43

*Caliste v. Cantrell,*
　329 F. Supp. 3d 296 (E.D. La. 2018) *aff'd,*
　937 F.3d 525 (5th Cir. 2019) .................................................. 51

*Canal Auth. of State of Fla. v. Callaway,*
　489 F.2d 567 (5th Cir. 1974) .................................................. 22

*Cap. Associated Indus., Inc. v. Stein,*
　922 F.3d 198 (4th Cir. 2019) ............................................ 20, 54

*Capital Associated Indus., Inc. v. Stein,*
  922 F.3d 198 (4th Cir. 2019) ................................................................ 45

*Citizens United v. Fed. Election Comm'n,*
  558 U.S. 310 (2010) ............................................................................. 41

*Daves v. Dallas County,*
  64 F.4th 616 (5th Cir. 2023), *cert. denied,*
  144 S. Ct. 548 (2024) ................................................................. 3, 34, 35

*Duplantis v. La. Bd. of Ethics,*
  2000-1750 (La. 3/23/01), 782 So. 2d 582 ......................................... 8, 46

*E.T. v. Paxton,*
  19 F.4th 760 (5th Cir. 2021) ............................................. 21, 54, 55, 57

*Ellis v. La. Bd. of Ethics,*
  2017-0385 (La. App. 1 Cir. 11/1/17), 233 So. 3d 722 .......................... 56

*Freedom From Religion Found. v. Abbott,*
  955 F.3d 417 (5th Cir. 2020) ................................................................ 28

*Gentile v. State Bar of Nev.,*
  501 U.S. 1030 (1991) ....................................................................... 42, 43

*Giboney v. Empire Storage & Ice Co.,*
  336 U.S. 490 (1949) ............................................................................. 41

*Glazer v. Comm'n on Ethics for Pub. Emps.,*
  431 So. 2d 752 (La. 1983) .................................................................... 50

*Green v. Mansour,*
  474 U.S. 64 (1985) ............................................................................... 28

*Harris Cnty. Comm'rs Ct. v. Moore,*
  420 U.S. 77 (1975) ............................................................................... 33

*Harrison v. Young,*
   48 F.4th 331 (5th Cir. 2022) ............................................................. 22

*Health Net, Inc. v. Wooley,*
   534 F.3d 487 (5th Cir. 2008) ............................................................ 34

*In re Arnold,*
   07-2342 (La. App. 1 Cir. 5/23/08), 991 So. 2d 531 ............................. 56

*In re Beychok,*
   495 So. 2d 1278 (La. 1986) .......................................................... 51, 52

*In re Jefferson Par. Firefighters Ass'n, Loc. 1374 Int'l Ass'n of
      Firefighters,*
   2024-0907 (La. App. 1 Cir. 8/1/25), 2025 WL 2177973 ..... 18, 31, 34, 53

*In re Lorusso,*
   2011-0666 (La. App. 1 Cir. 12/29/11), 85 So. 3d 712 ................. 7, 28, 38

*In re Marceaux,*
   96-1215 (La. App. 1 Cir. 2/14/97), 689 So. 2d 670 ........................ 51, 57

*In re Primus,*
   436 U.S. 412 (1978) ............................................................... 42, 43, 49

*In re Toney,*
   2012-1887 (La. App. 1 Cir. 5/30/14), 145 So. 3d 1043,
   *writ denied,* 2014-1357 (La. 9/26/14), 149 So. 3d 270 ............... 8, 28, 38

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31,*
   585 U.S. 878 (2018) ........................................................................ 40

*Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't,*
   849 F.3d 615 (5th Cir. 2017) ............................................................ 22

*Jefferson Par. Firefighters Ass'n, Local 1374 Int'l Ass'n of
      Firefighters v. La. Bd. of Ethics,*
   No. 2025-C-1112 (La. 2025) ..................................................... 2, 32, 34

*Johnson v. Mississippi,*
   403 U.S. 212 (1971) ...................................................................... 47

*Kastner v. Tex. Bd. of L. Examiners,*
   278 F. App'x 346 (5th Cir. 2008) .......................................................... 36

*Lawline v. Am. Bar Ass'n,*
   956 F.2d 1378 (7th Cir. 1992) ............................................................ 45

*Little v. Doguet,*
   71 F.4th 340 (5th Cir. 2023), *cert. denied,* 144 S. Ct. 1001 (2024) ...... 34

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
   457 U.S. 423 (1982) .................................................................. passim

*Monroe Mun. Fire & Police Civ. Serv. Bd. v. Brown,*
   2024-00543 (La. 9/3/25) __ So. 3d __, 2025 WL 2525394 ...................... 9

*Moore v. Hosemann,*
   591 F.3d 741 (5th Cir. 2009) ................................................. 19, 25, 27

*Moore v. Tangipahoa Par. Sch. Bd.,*
   507 F. App'x 389 (5th Cir. 2013) .............................................. 25, 26

*NAACP v. Button,*
   371 U.S. 415 (1963) .................................................................. passim

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra,*
   585 U.S. 755 (2018) ....................................................................... 41

*Nationwide Mut. Ins. Co. v. Unauthorized Prac. of Law Comm.,*
   283 F.3d 650 (5th Cir. 2002) ......................................... 25, 30, 31, 32

*NetChoice, LLC v. Fitch,*
   606 U.S. ----, 145 S. Ct. 2658 (2025) ................................................ 57

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,*
   491 U.S. 350 (1989) ....................................................................... 37

*Nken v. Holder,*
 556 U.S. 418 (2009) ......................................................................... 22

*Ohralik v. Ohio State Bar Ass'n,*
 436 U.S. 447 (1978) .......................................... 20, 42, 43, 54

*Parm v. Shumate,*
 73 F. App'x 78, 2003 WL 21756349 (5th Cir. 2003) ........................... 28

*Pub. Citizen, Inc. v. Bomer,*
 274 F.3d 212 (5th Cir. 2001) ............................................................ 47

*Railroad Commission of Texas v. Pullman Company,*
 312 U.S. 496 (1941) ........................................................... 16, 26

*Reetz v. Bozanich,*
 397 U.S. 82 (1970) ........................................................................... 26

*Rippo v. Baker,*
 580 U.S. 285 (2017) ......................................................................... 47

*Roberts v. U.S. Jaycees,*
 468 U.S. 609 (1984) ......................................................................... 40

*Roho, Inc. v. Marquis,*
 902 F.2d 356 (5th Cir. 1990) ............................................................ 22

*Sheppard v. Maxwell,*
 384 U.S. 333 (1966) ......................................................................... 47

*Sierra Club v. City of San Antonio,*
 112 F.3d 789 (5th Cir. 1997) ................................................. 20, 24, 37

*Sprint Commc'ns, Inc. v. Jacobs,*
 571 U.S. 69 (2013) ................................................................ 36, 37, 38

*Tex. Ass'n of Bus. v. Earle,*
 388 F.3d 515 (5th Cir. 2004) ............................................................ 35

*Tex. Democratic Party v. Abbott,*
 961 F.3d 389 (5th Cir. 2020) ........................................................ 29, 33

*Tex. Tribune v. Caldwell County,*
 121 F.4th 520 (5th Cir. 2024) ............................................................ 47

*United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n,*
 389 U.S. 217 (1967) ............................................................... passim

*United Transp. Union v. State Bar of Mich.,*
 401 U.S. 576 (1971) ............................................................. 41, 44, 49

*Veasey v. Abbott,*
 870 F.3d 387 (5th Cir. 2017) ........................................................ 21, 54

*Williams-Yulee v. Fla. Bar,*
 575 U.S. 433 (2015) ............................................................................ 42

*Word of Faith World Outreach Ctr. Church, Inc. v. Morales,*
 986 F.2d 962 (5th Cir. 1993) ........................................................ 27, 29

*Younger v. Harris,*
 401 U.S. 37 (1971) .............................................................................. 16

**Statutes**

18 U.S.C. § 371 ..................................................................................... 40

28 U.S.C. § 1292 ..................................................................................... 5

La. C.C.P. art. 1871 ................................................................................ 7

La. R.S. 14:26 ....................................................................................... 40

La. R.S. 33:2536 ..................................................................................... 9

La. R.S. 33:2537 ..................................................................................... 9

La. R.S. 42:1101 ............................................................................ passim

La. R.S. 42:1102.................................................................. 13, 14

La. R.S. 42:1111...................................................................... passim

La. R.S. 42:1134............................................................................7

La. R.S. 42:1135............................................................................7

La. R.S. 42:1141..................................................................... passim

La. R.S. 42:1141.6.................................................................. passim

La. R.S. 42:1142.........................................................................14

## Other Authorities

17A Charles Alan Wright & Arthur R. Miller, Federal Practice and
 Procedure § 4242 (3d ed. 2020).............................................27

52 La. Admin. Code Pt I,  1003 ..........................................8, 9

52 La. Admin. Code Pt I,  1008 ...........................................37

52 La. Admin. Code Pt I,  1009 ...........................................37

52 La. Admin. Code Pt I,  1101 ...........................................37

52 La. Admin. Code Pt I,  601 *et seq* ......................................8

Ambiguity, *Black's Law Dictionary* (12th ed. 2024).............................30

## Constitutional Provisions

La. Const. art. X, § 21............................................................7

## INTRODUCTION

Under Louisiana's Code of Governmental Ethics, may a union officer adjudicate disciplinary matters as a member of the Jefferson Parish Fire Civil Service Board while the union simultaneously funds the attorney appearing before that Board to represent a union member? After investigation and a public evidentiary hearing, the Louisiana Board of Ethics unsurprisingly answered no. Displeased with that answer, Local 1374, Jefferson Parish Firefighters Association (the Union) played the state and federal courts against each other. It filed a direct appeal in Louisiana's First Circuit Court of Appeal (as permitted by state law) and then, months later—but before the First Circuit ruled—ran to the federal district court below, filing a collateral § 1983 action to undercut the State judicial process and challenge the constitutionality of the Board of Ethics' interpretation of state law.

This is a textbook case for abstention. *Pullman* applies where an unclear state-law issue is fairly susceptible to an authoritative construction that could eliminate or substantially modify any federal question. *Younger* independently forbids federal interference with an ongoing, judicially supervised state adjudication that affords a full forum

1

for any federal constitutional objections. The Board of Ethics promptly moved to stay or dismiss this collateral suit on both grounds. The district court declined and, worse, entered a preliminary injunction—interfering with the still-pending state appeal and forcing the Board of Ethics to defend its opinion in the First Circuit on May 20, 2025, under the shadow of a federal injunction.

Fortunately, the Louisiana First Circuit saw past the Union's gamesmanship and affirmed the Board of Ethics' interpretation of the state law. The Union continues to press the direct appeal and has sought a writ from the Louisiana Supreme Court, arguing that the Board of Ethics and First Circuit both erred in the interpretation and application of La. R.S. 42:1111(E). *See Jefferson Par. Firefighters Ass'n, Local 1374 Int'l Ass'n of Firefighters v. La. Bd. of Ethics*, No. 2025-C-1112 (La. 2025). In a stroke of irony, our opposition to that writ application is likewise due today. So the Board of Ethics faces simultaneous litigation over the same declaratory opinion, against the same party, on the same day, in both state and federal court. "Our Federalism" demands more comity and restraint. *Daves v. Dallas County*, 64 F.4th 616, 625 (5th Cir. 2023) (en

banc), *cert. denied*, 144 S. Ct. 548 (2024). The injunction should be vacated on abstention grounds alone.

Abstention aside, the merits do not justify an injunction. The declaratory opinion addresses a real, concrete conflict of interest on an adjudicative body. It regulates who may sit in judgment when the Union is paying for—and its officers are helping to select—the advocate appearing before that tribunal. It does not stop the Union from organizing, advocating, retaining counsel, or funding representation. Any effect on association is thus incidental to the State's compelling interests in neutral decisionmaking and public confidence in the adjudicative process. The declaratory opinion was also tightly focused on the conflict at hand. The Union may still fund counsel, and a rank-and-file member may still serve on the Civil Service Board. What is off-limits is the conflicted pairing in which a Union officer adjudicates cases while Union-funded, Union-selected counsel argues before him. That is a targeted conflicts rule, not a First Amendment violation.

The remaining factors point the same way. The Union identifies no cognizable irreparable injury beyond its assertion of a First Amendment violation. By contrast, enjoining Louisiana's constitutionally-mandated

3

ethics regime inflicts ongoing, noncompensable harm on the State and the public by undermining impartiality and public trust in the process. The Legislature has made clear that protecting against conflicts of interest is itself a public necessity, *see* La. R.S. 42:1101(B), and courts likewise recognize that the public has a powerful interest in ethics and unbiased tribunals. The balance of equities and the public interest therefore favor lifting the injunction and allowing Louisiana's neutral ethics rules to operate while this Court resolves the appeal.

Accordingly, the Court should vacate the injunction and remand with instructions to abstain so Louisiana's courts can complete their review without federal interference.

# JURISDICTIONAL STATEMENT

On April 15, the district court issued its preliminary injunction. ROA.675 (Order and Reasons). The State appealed. ROA.716. This Court thus has jurisdiction under 28 U.S.C. § 1292(a)(1).

## ISSUES PRESENTED

1.  Whether the district court abused its discretion in holding that the Union was likely to succeed on the merits when (a) the court should have abstained in light of ongoing, parallel state litigation on an underlying dispositive issue of state law, and (b) the Union is unlikely to prevail on its First Amendment claim.

2.  Whether the district court abused its discretion in concluding that the remaining preliminary-injunction factors favor the Union when it failed to show irreparable harm and when the balance of equities and the public interest favor enforcing Louisiana's neutral governmental-ethics rules.

## STATEMENT OF THE CASE

### I.    Louisiana's Board of Ethics and the Declaratory-Opinion Framework.

Louisiana, like every state, maintains a Code of Governmental Ethics and a Board of Ethics to effectuate it. La. R.S. 42:1101 *et seq.*; *see* La. Const. art. X, § 21. The Board of Ethics may issue advisory opinions, adjudicate binding declaratory opinions, and prosecute ethics charges against state and local officials. *See* La. R.S. 42:1134–35, 42:1141, 42:1141.6.

This case is a collateral federal challenge to a declaratory opinion. Such opinions "declare rights, status, and other legal relations" under the Code of Governmental Ethics "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." La. R.S. 42:1141.6(A), (C). They are "final" and binding on the parties—treated identically to declaratory judgments issued by the courts, and expressly made reviewable only as provided by statute. La. R.S. 42:1141.6(D); *In re Lorusso*, 2011-0666 (La. App. 1 Cir. 12/29/11), 85 So. 3d 712, 718; *see* La. C.C.P. art. 1871. In that way, declaratory opinions resolve "a real and substantial controversy admitting of specific relief through a decree of conclusive character." *In re Toney*, 2012-1887 (La.

7

App. 1 Cir. 5/30/14), 145 So. 3d 1043, 1048 (quotation omitted), *writ denied*, 2014-1357 (La. 9/26/14), 149 So. 3d 270. Declaratory opinions thus stand in stark contrast to nonbinding *advisory* opinions, which the Board of Ethics may also issue but are not justiciable—and not at issue here. *See Duplantis v. La. Bd. of Ethics*, 2000-1750 (La. 3/23/01), 782 So. 2d 582, 592–93; *see also* 52 La. Admin. Code Pt I,  601 *et seq.*

That difference matters because declaratory opinions, unlike advisory opinions, carry all the hallmarks of enforcement and final adjudication. Before one may issue, Louisiana law requires the Board of Ethics to conduct "a public hearing" with "full and complete opportunity to present evidence" afforded to "the requesting party, all other interested parties, and the board's staff." La. R.S. 42:1141.6(D). The applicant and respondents square off before and during those adversarial evidentiary proceedings. 52 La. Admin. Code Pt I,  1003.

Ahead of the hearing, discovery is open to anyone "to be subject of [the] public hearing," *id.* at 1101(A), usually with witness subpoenas and document productions, *id.* at 1009(A)–(B), (D). And the hearing itself operates under standard judicial evidentiary rules: invocation of the rule for witnesses, certain judicially noticeable facts, and objections for

8

relevance, privilege, and the like. *See id.* at 1010 & 1008(A)–(B), (E), (G). Only after that adjudicatory proceeding may the Board of Ethics "render its opinion," typically within 90 days. *Id.* at 1017(A)–(B).

Once the Board of Ethics issues its declaratory opinion, it is "final" and binding on the parties, subject only to judicial review—and only in the Louisiana Court of Appeal, First Circuit. La. R.S. 42:1141.6(D).

## II. The Union's Vice President Serves on a Civil Service Board.

In 2017, Fire Captain Craig Burkett was elected to the three-member Jefferson Parish Fire Civil Service Board on behalf of his station, the East Bank Consolidated Special Services Fire Department. ROA.94 ¶¶ 1, 3 (Burkett Declaration). Civil Service Boards are composed of uncompensated members who investigate and hear demands of any regular employee within the board's jurisdiction. ROA.34; *see* La. R.S. 33:2536(A), 33:2537; *Monroe Mun. Fire & Police Civ. Serv. Bd. v. Brown*, 2024-00543 (La. 9/3/25) __ So. 3d __, 2025 WL 2525394, at *1, 5–8 ("clarify[ing] the respective roles of the board and courts in reviewing employee discipline"). Burkett also serves as the Vice President of Plaintiff Jefferson Parish Firefighter Association, Local 1374—a union representing dues-paying firefighters in Burkett's fire department.

9

ROA.16–17. For his role as an officer, the Union pays Burkett a salary, expenses, and per diem. ROA.43.

Before Burkett's election, the Union paid the legal fees for its members appearing before the Civil Service Board. ROA.35.

### III. The Union Repeatedly Sought The Board of Ethics' Opinion And Then Declined To Accept The Result.

Burkett's election, though, created a fast-materializing conflict of interest under state law—his sister and other union members questioned whether they could file complaints with the Civil Service Board while he served on it. *See* ROA.43–44. The Civil Service Board then sought an advisory opinion from the Board of Ethics addressing those issues and, centrally, whether Burkett must "recuse himself from matters brought by the Union, or in which the Union represents an appellant, because he is an officer of the Union?" ROA.45; *see also* ROA.94–95 ¶ 5.

In July 2018, the Board of Ethics answered that he did not have to recuse himself *if* the Union lacked a substantial economic interest in the complainant's case. ROA.43–46 (July 2018 Advisory Opinion). But it also explained that the Union *would* violate Louisiana law if it received dues and then provided legal representation to complainants before the Civil Service Board. ROA.45–46 (citing La. R.S. 42:1111(E)). The Board of

10

Ethics reaffirmed its opinion on reconsideration later that year. ROA.47 (September 2018 Letter).

In August 2019, the Union requested reconsideration and, in November 2019, asked to convert its reconsideration request to an application for a declaratory opinion. *See* ROA.95 ¶¶ 7–8. Before the Board of Ethics ruled, it notified the Union and Burkett that it had opened investigations into alleged violations of La. R.S. 42:1111(E)(1)— tied to the Union-funded representation before the Civil Service Board while a Union officer chaired it. *See* ROA.48–50 (Dec. 2019 Letter to Union); ROA.51–53 (Dec. 2019 Letter to Burkett); ROA.95 ¶ 9. State-court litigation over the investigations ensued.[1]

---

[1] That litigation was the first of three lawsuits brought by the Union. It began in June 2020, when it and Burkett sued the Board of Ethics in Louisiana's Nineteenth Judicial District over the 2018 advisory opinion and investigation notices. Burkett asserted state- and federal-constitutional claims and sought declaratory relief that the Union may fund members' legal defenses before the Civil Service Board, plus an injunction halting the Board's investigation. *See* ROA.59–60, 67–70 (19th JDC Petition). By February 2021, the court had denied a preliminary injunction and declined to dismiss on the Board's exceptions; after a lull, the court denied the Union's October 2022 summary-judgment motion, and the First Circuit summarily denied a supervisory writ in March 2023. *See* ROA.372–77 (19th JDC docket). The case was still active when the Board of Ethics filed its motion to dismiss in this case. ROA.372.

Against that procedural history, the Union asked in May 2023 for *another* declaratory opinion from the Board of Ethics. This time, it posed the hypothetical of one of its trustees—*not* Burkett—being elected to the Civil Service Board. ROA.379–86 (May 2023 Application for Declaratory Opinion); *see also* ROA.32. The application asked—once again—whether the Code of Governmental Ethics prohibits the Union from "pay[ing] for legal services in connection with the representation of its members in matters before the Jefferson Parish Fire Civil Service Board while a Trustee of the Firefighter Union, serves as an elected member of the Civil Service Board." ROA.380; *see also* ROA.31–32. The submission largely reprised prior arguments—that Civil Service Board members are elected and thus not "public servants" under La. R.S. 42:1111(E)(1), and that union dues are not a payment for "assisting" members before the Civil Service Board within the statute's meaning. ROA.380–85; *see also supra* p. 11 n.1.

The Board of Ethics granted consideration of the application in July 2023 and conducted a public hearing with live testimony and attorney argument in November 2023. ROA.31–32. Two months later, in January 2024, the Board of Ethics announced that it would adhere to its prior

12

view that La. R.S. 42:1111(E) prohibits *the combination of* the Union receiving dues and providing legal services to members appearing before the Civil Service Board while Burkett (or anyone) simultaneously sits on the Board and serves as one of the Union's officers or trustees. *See* ROA.83–84 (Meeting Minutes).

The declaratory opinion explained the Board of Ethics' reasoning in detail. *See generally* ROA.31–41. It began with the thrust of the Ethics Code and the relevant statute's text, which provides:

> No public servant, and *no legal entity of which such public servant is an officer*, director, trustee, partner, or employee, or in which such public servant has a substantial economic interest, *shall receive* or agree to receive *any thing of economic value for assisting a person in a transaction*, or in an appearance in connection with a transaction, *with the agency of such public servant.*

La. R.S. 42:1111(E)(1) (emphases added).

Then, the opinion turned to the law's application: The Union "assists" its members—it provides counsel. ROA.38 (citing La. R.S. 42:1102(4) (defining "assist")). It does so "in a transaction with the agency of such public servant"—in hearings before the Civil Service Board with Burkett presiding. ROA.39 (citing La. R.S. 42:1102(23) (defining "transaction")). The Union receives a "thing of economic value"

13

in return—membership dues set at 1.5% of a member's starting base salary. ROA.39 (citing La. R.S. 42:1102(22)(a) (defining "thing of economic value")). And under the Union's proposed facts, it is a "legal entity of which such public servant is an officer, director, trustee, partner or employee." ROA.40–41. The Board of Ethics determined the letter of the law plainly captured the Union's proposed conduct, just as it had in Burkett's case six years earlier. ROA.41.

Burkett was re-nominated to the Civil Service Board in May 2024. ROA.25 ¶ 51.

## IV. The Union Pursued Parallel Litigation in State and Federal Court.

*The state court suit.* Consistent with Louisiana law, the Union directly appealed the declaratory opinion to the First Circuit in April 2024. ROA.388 (Notice of Appeal); ROA.390–405 (Union's state-court brief); La. R.S. 42:1142(A)(1) (permitting direct appeals of Board of Ethics' actions to the First Circuit). The Union filed its opening brief on October 18, 2024, arguing the Board of Ethics "erred as a matter [of law] in concluding that La. R.S. 42:1111E prohibits a Union from using dues to pay for representation of its members before the Civil Service Board,

14

when an Officer or Trustee of the Union is serving on the [] Board." *See* ROA.400–02.

*The federal court suit.* Rather than await that review, the Union filed this follow-on § 1983 lawsuit in the Eastern District of Louisiana in August 2024. ROA.15–30 (Complaint). The Union sued the Board of Ethics itself and all its members (at that time) in their official capacities, alleging that the declaratory opinion infringed the Union's First Amendment right to hire attorneys to assist its members in the assertion of their legal rights. *See generally id.* The next day, the Union moved for a preliminary injunction to enjoin "the application and enforcement" of the declaratory opinion as applied to the Union. ROA.125–28 (PI Motion); ROA.129–48 (Memorandum) (relying on *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967)).

The Defendants moved for dismissal under Rules 12(b)(1) and 12(b)(6), explaining that sovereign immunity bars the lawsuit against the Board of Ethics, federal abstention doctrines make jurisdiction inappropriate, and Fifth Circuit precedent likewise forecloses the claim on the merits. ROA.333 (Motion); ROA.335–67 (Memorandum). Specifically, Defendants explained that the *same* plaintiff was

15

*simultaneously* challenging the *same* declaratory opinion in the Louisiana First Circuit—litigating a state-law question that could moot this federal case. And because the declaratory opinion issued after an adversarial, on-the-record hearing and carries binding effect, it is akin to a civil enforcement proceeding under state law for violations of the Code of Governmental Ethics. This posture made the case textbook for federal abstention under *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496 (1941), or *Younger v. Harris*, 401 U.S. 37 (1971).

All that notwithstanding, on April 15, the district court entered an order granting in part and denying in part Defendants' motion to dismiss, and granting the Union's motion for preliminary injunction. ROA.675–713 (Order and Reasons). First, the district court correctly dismissed the Board of Ethics itself on sovereign-immunity grounds. ROA.686–91.[2] Second, the court rejected the Board Members' federal abstention arguments, explaining that *Younger* did not apply because the parallel state matters were not coercive civil-enforcement proceedings "akin to a criminal prosecution"; that *Pullman* failed because no unsettled or

---

[2] That left the Board Members (in their official capacities) as the remaining defendants. This brief refers to them as the "Board Members" or, when appropriate, "the State."

ambiguous state-law issue was shown; and, in any event, the equities counseled against abstention. ROA.691–700. Third, the court held that "the Union's proffered right—paying for legal representation for its members appearing before the Civil Service Board—fell within its First Amendment right to associate" and "the Board Members' justification for abridging this right did not meet the exacting scrutiny standard." ROA.710–11. Accordingly, the district court enjoined the remaining Board Members "from enforcing [the] March 8, 2024 declaratory opinion as applied to the Union." ROA.713. The Board Members noticed an interlocutory appeal and sought a stay pending appeal. ROA.716 (Notice of Appeal); ROA.718 (Motion to Stay).

*Ongoing proceedings in both courts.* Back in state court, the First Circuit held a second round of oral argument on May 20, 2025, in the direct appeal of the declaratory opinion. The panel acknowledged this federal case and asked about its status.

To preserve the state court's ability to decide the dispositive state-law question without federal interference, the Board Members also moved in this Court for a stay pending appeal on May 27, 2025. ECF No. 6-1 (Fifth Circuit Motion to Stay). Only later did the district court deny

17

the Board Members' motion to stay pending appeal. ROA.760–67 (Order and Reasons denying stay).

On August 1, 2025, the Louisiana First Circuit affirmed (by a 2-1 vote) the declaratory opinion and adopted the Board of Ethics' construction of La. R.S. 42:1111(E). *See generally In re Jefferson Par. Firefighters Ass'n, Loc. 1374 Int'l Ass'n of Firefighters*, 2024-0907 (La. App. 1 Cir. 8/1/25), 2025 WL 2177973.[3] The panel's opinion acknowledged this parallel federal litigation. *Id.* at *2 n.3. The Board Members promptly filed a Rule 28(j) letter advising this Court of that ruling. ECF No. 52. On August 12, 2025, this Court granted the Board Members' motion and stayed the preliminary injunction pending appeal. ECF No. 63-2.

The Union has sought supervisory review of the First Circuit's decision in the Louisiana Supreme Court. The writ application largely reprises the arguments the First Circuit rejected and asks the Louisiana Supreme Court to exercise its discretionary jurisdiction to revisit that state-law question. The application remains pending; the Board of Ethics' opposition is due on October 2, 2025—the same day as this opening brief.

---

[3] A copy of the First Circuit's opinion is available at ECF No. 52.

There, the Board of Ethics has asked the Louisiana Supreme Court to deny the writ application and, "if this Court exercises its supervisory jurisdiction at all, it should put an end to the Union's gamesmanship by confirming that the Code of Ethics' ban on pay-for-privilege or its appearance is both compelling and narrowly-drawn—and poses no First Amendment problem as applied here."

## SUMMARY OF THE ARGUMENT

The injunction cannot stand. The Union failed to clear the threshold showing for extraordinary relief, and the district court abused its discretion in holding otherwise.

Start with likelihood of success. This suit arrived in federal court while Louisiana's courts were already parsing the controlling state-law question under La. R.S. 42:1111(E). In that posture, federal restraint was required. A *Pullman* stay would avoid an unnecessary constitutional ruling while the Louisiana Supreme Court has the opportunity to definitively construe the state statute, *Moore v. Hosemann*, 591 F.3d 741, 745 (5th Cir. 2009), and *Younger* independently counsels noninterference with an ongoing state adjudicative process that provides a full forum for constitutional objections, *see Middlesex Cnty. Ethics Comm. v. Garden*

19

*State Bar Ass'n*, 457 U.S. 423, 432 (1982). Whether the district court should have abstained "goes directly to" the likelihood-of-success prong on interlocutory review, and the refusal to abstain here was error. *See Sierra Club v. City of San Antonio*, 112 F.3d 789, 793 n.11 (5th Cir. 1997).

Second—and worse for the Union—the merits do not support an injunction. The challenged declaratory opinion polices a conflict-of-interest scenario; it does not prohibit the Union from organizing, advocating, retaining counsel, or funding representation. Any incidental effect on association is justified by weighty governmental interests—neutral adjudication and public confidence—and is the kind of "only marginal[]" impact the Supreme Court has recognized as permissible. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 459 (1978); *Cap. Associated Indus., Inc. v. Stein*, 922 F.3d 198, 206 (4th Cir. 2019). Moreover, the declaratory opinion is narrow: The Union may continue to fund counsel, and non-officer Union members may serve on the Civil Service Board. All that is forbidden is the conflicted pairing of a Union "officer, director, trustee, partner, or employee" adjudicating cases while Union-funded, Union-selected counsel appears before the same tribunal. That is not a First Amendment violation; it is basic ethics.

20

The remaining factors cannot salvage the injunction. The Union faces no irreparable injury where no First Amendment violation exists. But when the State is enjoined from enforcing its laws, irreparable harm and the public interest align in the State's favor. *See E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021); *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). Sidelining Louisiana's constitutionally-mandated ethics regime inflicts ongoing, noncompensable harm on the State and the public by eroding impartiality and trust in the process—precisely the interests the Legislature prioritized in the Code of Governmental Ethics. La. R.S. 42:1101(B). The balance of equities and the public interest therefore favor restoring ordinary enforcement while appellate review proceeds.

This Court should vacate the preliminary injunction and remand with instructions to abstain—entering a *Pullman* stay or a *Younger* dismissal—so Louisiana's courts can resolve the dispositive state-law question without federal interference.

## STANDARD OF REVIEW

This Court reviews a district court's "grant of [a] preliminary injunction for abuse of discretion, reviewing underlying factual findings

21

for clear error and legal conclusions de novo." *Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022); *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984) ("[C]onclusions of law … are subject to broad review and will be reversed if incorrect." (quotation omitted)).

A "preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). To do so, a plaintiff must show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm absent the injunction, (3) that the harm he will suffer without the injunction outweighs the cost to comply with the injunction, and (4) that the injunction is in the public interest. *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017). While the first two factors "are the most critical," *Nken v. Holder*, 556 U.S. 418, 434 (2009), this Court's review can end at any prong, *Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990) (failure to prove just one can be dispositive).

## ARGUMENT

The preliminary injunction should be vacated because the Union did not satisfy any of the prerequisites for such extraordinary relief. The Union is unlikely to succeed on the merits twice over: The district court abused its discretion by (1) crediting "likely success" in a posture that called for deference to ongoing state proceedings and (2) misreading a neutral conflicts rule as an associational restriction when, at most, it imposes an incidental burden justified by important governmental interests. The likelihood-of-success factor alone warrants vacatur.

The remaining factors cannot save the Union. It has not shown irreparable harm from a rule that merely prevents pairing an insider adjudicator with its dues-funded advocate before the same tribunal. And both the balance of equities and the public interest favor preserving Louisiana's neutral, even-handed ethics rules while state review runs its course.

## I.    THE UNION IS NOT LIKELY TO SUCCEED ON THE MERITS.

The injunction fails at the threshold because the Union cannot show a likelihood of success on the merits. First, this case landed in federal court while Louisiana's courts were already resolving the dispositive

23

state-law question under La. R.S. 42:1111(E), so abstention should have applied, thus defeating likely success as a matter of law. *See Sierra Club*, 112 F.3d at 793 n.11. Second, the Union cannot prevail on the underlying merits: The Board's opinion regulates conflicts and adjudicative impartiality, not associational rights, and any incidental burden is justified by important governmental interests in neutral tribunals. Either way, the district court abused its discretion.

## A. The District Court Abused Its Direction By Not Abstaining.

Two abstention doctrines apply here, and the district court abused its discretion by brushing them both aside—then compounding the error by granting a preliminary injunction. *Pullman* required a stay while Louisiana's courts resolved the dispositive state-law question under La. R.S. 42:1111(E). *Younger* independently counseled noninterference with an ongoing state adjudicative process that implicates core state ethics interests. In this posture, abstention alone defeats any likely success finding and forecloses extraordinary relief. *Sierra Club*, 112 F.3d at 793 n.11 ("Whether the court should have abstained goes directly to whether the plaintiff was likely to succeed on the merits. The defendants are

entitled to raise this argument in this interlocutory appeal of the injunction ….").

### 1.  This is a textbook case for *Pullman* abstention.

It is difficult to envision a case that more clearly begs *Pullman* abstention. If the Louisiana Supreme Court grants the Union's writ application and reverses the First Circuit, this federal case evaporates. That is the core of *Pullman*: It applies to "(1) a federal constitutional challenge to state action" with "(2) an unclear issue of state law that, if resolved, would make it unnecessary for [the court] to rule on the federal constitutional question." *Nationwide Mut. Ins. Co. v. Unauthorized Prac. of Law Comm.*, 283 F.3d 650, 653 (5th Cir. 2002).

"In other words," *Pullman* is appropriate "when there is an issue of uncertain state law that is fairly subject to an interpretation [by a state court] which will render unnecessary or substantially modify the federal constitutional question." *Hosemann*, 591 F.3d at 745 (quoting *Baran v. Port of Beaumont Nav. Dist.*, 57 F.3d 436, 442 (5th Cir. 1995)); *Moore v. Tangipahoa Par. Sch. Bd.*, 507 F. App'x 389, 395 (5th Cir. 2013) (per curiam) ("A federal court should generally abstain from exercising jurisdiction in a matter when an unsettled area of state law has an effect

on the outcome of a federal constitutional claim or would render a decision on the federal issue unnecessary.").

*Pullman* abstention thus promotes "harmonious relation[s] between state and federal authority," by ensuring a federal court addresses a constitutional question only when necessary. *Pullman*, 312 U.S. at 500–01; *see Reetz v. Bozanich*, 397 U.S. 82, 86–87 (1970) ("A state court decision ... could conceivably avoid any decision [of the federal question] and would avoid any possible irritant in the federal-state relationship."). So lower courts should proceed with caution before sparking the "'needless friction' between [a] federal pronouncement[] and state policies." *Reetz*, 397 U.S. at 87 (quoting *Pullman*, 312 U.S. at 500).

The Union's First Amendment claim squarely challenges state action—the Board of Ethics' declaratory opinion. That opinion turns on the state-law question of whether La. R.S. 42:1111(E) prohibits the Union from using dues to provide legal services to members when they appear before the Civil Service Board while one of the Union's officers sits on the Civil Service Board adjudicating those cases. ROA.36–41; *see* ROA.83–84; *see also Tangipahoa Par. Sch. Bd.*, 507 F. App'x at 395 ("[T]he State is likely to prevail in its claim that the district court should

26

not have exercised jurisdiction in light of the pending state-court action challenging the validity of the Program under Louisiana's constitution."). That was precisely the question pending before the Louisiana First Circuit when the Union sued in federal district court. ROA.469–78 (Union's brief arguing the Board of Ethics' interpretation and application of La. R.S. 42:1111(E) is incorrect and asking the court to set aside, vacate, and reverse the declaratory opinion). And it is the question now pending before the Louisiana Supreme Court.

The "existence of [the] federal constitutional question" in this case is thus "entirely contingent on an unresolved interpretation of [state] law." *Hosemann*, 591 F.3d at 745; *see* 17A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4242 (3d ed. 2020). If the state court decides that the Board of Ethics was wrong on state law, this federal case is over before it begins. *Word of Faith World Outreach Ctr. Church, Inc. v. Morales*, 986 F.2d 962, 967 (5th Cir. 1993) (*Pullman* addresses "the undesirability of reaching constitutional questions that

might be mooted by the application of state law."). That is *Pullman*'s paradigm.[4]

Yet the district court said *Pullman* was inapplicable because *the federal court* was only "assess[ing] the constitutionality of the 2024 Declaratory Opinion"—not the state statute. ROA.699. That both misunderstands *Pullman* and the parallel state court appeal. "There is no requirement, under *Pullman*, that a federal court be asked to adjudicate precisely the same issue that is being adjudicated in state court in order for *Pullman* to apply." *Parm v. Shumate*, 73 F. App'x 78, 2003 WL 21756349, at *3 (5th Cir. 2003) (rejecting the same reasoning). And according to state law, the Louisiana First Circuit's review is for whether the declaratory opinion properly applied the statute. La. R.S. 42:1141.6; *see, e.g.*, *Lorusso*, 85 So. 3d at 718; *Toney*, 145 So. 3d at 1048–49.

---

[4] Worse still, if the state court agrees with the Union, then the federal lawsuit would also be barred by sovereign immunity. Without a declaratory opinion to enforce, the Union would solely be seeking an impermissible, retrospective declaration that the Board Members violated their constitutional rights. *See Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) (prohibiting "backwards-looking, past-tense declaratory" relief); *Green v. Mansour*, 474 U.S. 64, 68–69 (1985) (finding that the Eleventh Amendment barred a claim for declaratory relief once the claim for injunctive relief was rendered moot).

The First Circuit's recent decision underscores why the district court's rejection of *Pullman* was an abuse of discretion. It's clear that the Union had "an adequate state forum in which to obtain a resolution of the state law issues while preserving its federal constitutional claims." *Word of Faith*, 986 F.2d at 969 n.12. That is, "the potential for a ready resolution of the [Union's] claims in state court" should have "confirm[ed the] conclusion that *Pullman* abstention is warranted here." *Id.* Yet the district court forged ahead, issuing its order and reasons shortly before the First Circuit's second round of oral argument and disregarding that the state court's "forthcoming interpretation of state law could have made any federal constitutional ruling 'unnecessary.'" *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 417 (5th Cir. 2020) (Costa, J., concurring in stay of preliminary injunction pending appeal on *Pullman* grounds) (quotation omitted). That is precisely the scenario *Pullman* is designed to avoid.

The lower court also faulted *the Board Members* for not "meet[ing] their burden" of proving that the state law is ambiguous. ROA.700. That was misplaced for several reasons, not least because it gives the Union fodder for state court. True, an ambiguous statute can trigger *Pullman*— but that is only because an ambiguous statute is necessarily "'fairly

29

susceptible' to an interpretation that would render it unnecessary for [a federal court] to decide the federal constitutional questions in a case." *Nationwide Mut. Ins. Co.*, 283 F.3d at 653 (quotation omitted); *see* Ambiguity, *Black's Law Dictionary* (12th ed. 2024) ("An uncertainty of meaning based not on the scope of a word or phrase but on a semantic dichotomy that gives rise to any of two or more quite different but almost equally plausible interpretations."). That La. R.S. 42:1111(E) is "fairly susceptible" to different interpretations comes not from an ambiguity in it—but from the Union and the Board of Ethics having two diametrically opposed views of what the statute unambiguously provides.

Even as the Union stayed silent on ambiguity here (claiming it was not challenging the interpretation, only the application of that interpretation), it told the Louisiana First Circuit that La. R.S. 42:1111(E) is "unambiguous," that the Board of Ethics unanimously misread that supposedly clear statute, and that the court should reverse the declaratory opinion on that basis. *See* ROA.402 ("La. R.S. 42:1111E is thus not applicable" to the Union, and "[t]here is *no support* for [a contrary] conclusion" especially because the Board of Ethics' interpretation "is contrary to the *plain and unambiguous* language of the

statute" (emphases added)). *Pullman* does not require state defendants to prove the plaintiff's own state-law theory in federal court; to insist otherwise is perverse and flips *Pullman*'s comity objective inside out.

Regardless, the district court was provided (yet ignored) the ample proof of competing interpretations.[5] At the time of the district court proceedings, there was little better evidence than the Union itself maintaining that La. R.S. 42:1111(E) is "'fairly susceptible' to an interpretation that would render it unnecessary for [a federal court] to decide the federal constitutional questions in a case." *Nationwide Mut. Ins. Co.*, 283 F.3d at 653. Now there is definitive proof: Louisiana's First Circuit split 2-1 on its interpretation of La. R.S. 42:1111(E). *In re Jefferson Par. Firefighters Ass'n*, 2025 WL 2177973, at *1–6.; *see also Tangipahoa Par. Sch. Bd.*, 507 F. App'x at 396 (determining *Pullman* applies, especially "in light of a recent decision by a Louisiana district court" discussing the issue). The panel majority concluded the Union's

---

[5] The Board Members, of course, maintain that Section 42:1111(E) is unambiguous and that the Board of Ethics and the First Circuit are correct. But *Pullman* does not require actual ambiguity. It is enough that the statute is fairly susceptible to a construction that would obviate or materially alter the federal constitutional question—precisely what the ongoing state proceedings demonstrate.

"interpretation of La. R.S. 42:1111E ignores the clear and unambiguous language of the statute." *Jefferson Par. Firefighters Ass'n*, 2025 WL 2177973, at *4. The dissent found the statute to go unambiguously the other way—calling the majority's interpretation "absurd." *Id.* at *5 (Fields, J., dissenting). The Union evidently believes its interpretation is fairly susceptibly enough to Judge Fields's view to seek review from the Louisiana Supreme Court on that question. That calls for *Pullman* abstention.

As a last bootstrap, the district court averred that "even if the Board Members had met their burden under *Pullman*, the Court would exercise its discretion and decline to abstain." ROA.700. It did so principally because the Union alleged a violation of its First Amendment rights and because of "the amount of time the Union has suffered." *Id.* That was plainly an abuse of discretion. For starters, that the Union is bringing a constitutional challenge is a *prerequisite* to invoking *Pullman*; it cannot also be the reason not to invoke it. *See Nationwide Mut. Ins.*, 283 F.3d at 653 (*Pullman* requires "a federal *constitutional challenge* to state action" (emphasis added)). For the other, the court's speculation about delayed justice is belied by its own later statement (related to *Younger*) that the

32

Union has never been subject to a "coercive state enforcement action." ROA.696. Whatever delay exists is of the Union's own making: It filed this suit four months *after* appealing directly to the Louisiana First Circuit to set aside the declaratory opinion on state-law grounds—and never once sought to expedite that appeal. ROA.462, ROA.464–79; *Tex. Democratic Party*, 961 F.3d at 418 (Costa, J., concurring) ("[T]he timing of the parallel litigation made this such a strong case for abstaining.").

The lower court abused its discretion by failing to invoke *Pullman* abstention. It should have stayed this federal collateral challenge while the Louisiana courts decide the dispositive state-law issue that could make this federal case all for naught. *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 88 n.14 (1975) ("[T]he proper course in ordering '*Pullman* abstention' is to remand with instructions to retain jurisdiction but to stay the federal suit pending determination of the state-law questions in state court.").

### 2.    This case falls squarely within *Younger*'s core.

The district court also declined to apply *Younger*'s mandatory abstention command for a parallel state ethics adjudication. *See* ROA.695–97; *Middlesex Cnty.*, 457 U.S. at 432. *Younger* requires federal

court abstention when three criteria are met: "(1) the federal proceeding would interfere with an 'ongoing state judicial proceeding'; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has 'an adequate opportunity in the state proceedings to raise constitutional challenges.'" *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012) (quoting *Middlesex*, 457 U.S. at 432); *e.g.*, *Little v. Doguet*, 71 F.4th 340, 345 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 1001 (2024). Those elements merited short work given the then-pending Louisiana First Circuit appeal, the State's obvious interest in governmental ethics, and the Union's ability to raise its First Amendment concerns in that state forum.[6] *See Health Net, Inc. v. Wooley*, 534 F.3d 487, 495 (5th Cir. 2008) (*Younger*'s "rationale is especially

---

[6] It makes no difference under *Younger* that the litigant "failed even to attempt to raise any federal constitutional challenge in the state proceedings." *Middlesex*, 457 U.S. at 435 (emphasis omitted); *see Daves*, 64 F.4th at 629 ("All that *Younger* and its progeny mandate, however, is an opportunity to raise federal claims in the course of state proceedings."). In all events, the First Circuit was keenly aware of the First Amendment arguments. *In re Jefferson Par. Firefighters Ass'n*, 2025 WL 2177973, at *2 n.3. And with today's filing of the Board of Ethics' opposition to the Union's writ application, the Union's First Amendment qualms are plainly before the Louisiana Supreme Court to consider (and reject) as a matter of constitutional avoidance. *See Jefferson Par. Firefighters Ass'n, Local 1374 Int'l Ass'n of Firefighters v. La. Bd. of Ethics*, No. 2025-C-1112 (La. 2025).

important where the state provides a forum for the claim and might be able to resolve the issue on state law grounds, thereby avoiding the federal constitutional issues."). Nor did anyone suggest an exception to *Younger* might apply.

But the district court again declined to abstain. In its view, *Younger* does not apply because this case does not concern state "civil enforcement" since the proceeding "was initiated by the *Union's* request" to the Board of Ethics and so no "punitive ruling" is on the horizon. ROA.695–96. That conclusion woefully ignores Louisiana's statutory scheme: Every step leading to a Board of Ethics' declaratory opinion is judicial in nature, and the opinion itself has binding legal effect. *See supra* at pp. 7–9.

"*Younger*'s applicability has been expanded to include certain kinds of civil and even administrative proceedings that are 'judicial' in nature." *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 520 (5th Cir. 2004); *Daves*, 64 F.4th at 625 ("[T]he Supreme Court, far from disavowing or materially narrowing the doctrine, repeatedly expanded its reach in the succeeding cases."). Indeed, *Younger* stretches to federal court intervention in a county ethics committee's review of ethics complaints about an attorney.

*See Middlesex*, 457 U.S. 423; *e.g.*, *Kastner v. Tex. Bd. of L. Examiners*, 278 F. App'x 346, 349 (5th Cir. 2008). It is hard to see any daylight between the Board of Ethics' proceedings (and the "extremely important [state] interest") here and those in *Middlesex*. 457 U.S. at 434. And the district court's lone distinguishing fact—that the proceedings were initiated by the Middlesex County Ethics Committee—is immaterial here.

It's true that the initiator of a proceeding is *one* factor in whether a state proceeding qualifies for *Younger* abstention. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 79 (2013) ("Such enforcement actions are characteristically initiated to sanction the federal plaintiff."). But here, that factor cuts no particular direction. Sure, the Union requested a declaratory opinion about the ethics of its and its trustees' actions under Louisiana's Code of Governmental Ethics. ROA.379. But Louisiana law vests the Board of Ethics with complete discretion to initiate (or not) declaratory opinion proceedings—precisely because they consume significant time and resources (both investigative and adjudicative). La. R.S. 42:1141.6. And yet the Board of Ethics exercised that discretion and

36

voted to do so here, making it artificial to say the Board is not (at least in part) the initiator of the proceedings. ROA.149–50.

Initiation aside, everything else about declaratory opinion proceedings is "judicial in nature," *Sierra Club*, 112 F.3d at 798 (to invoke *Younger*, "the pending state proceeding must be ongoing and judicial in nature" (quotation omitted)), and akin to a "civil enforcement proceeding," *Sprint*, 571 U.S. at 73. *See New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 370–71 (1989) ("proceedings in the present case were not judicial in nature" but instead "were plainly legislative"). In Louisiana, declaratory opinions follow months of investigation and discovery. 52 La. Admin. Code Pt I, 1009(A)–(B), (D) & 1101; *see Sprint*, 571 U.S. at 79 ("Investigations are commonly involved" in civil enforcement proceedings). That effort culminates in "a public hearing" with "full and complete opportunity to present evidence" afforded to "the requesting party, all other interested parties, and the board's staff," La. R.S. 42:1141.6(D), which operates under standard judicial evidentiary rules, *see* 52 La. Admin. Code Pt I, 1008(A)–(B), (E), (G) & 1101. And the hearing can "culminate" in formal charges. 52 La. Admin. Code Pt I, 1008(D) ("charges may be enlarged to conform" based

on the evidence); *see Sprint*, 571 U.S. at 80 (civil enforcement proceedings "often culminat[e] in the filing of a formal complaint or charges").

This case fits *Middlesex* and *Sprint* squarely. Once the Board of Ethics issues its declaratory opinion, it is "final" as to the parties and subject only to judicial review by the Louisiana "Court of Appeal, First Circuit." La. R.S. 42:1141.6; *see Sprint*, 571 U.S. at 81 ("the purpose of the hearing was to determine whether the lawyer should be disciplined for his failure to meet the State's standards of professional conduct"). And "[i]t is clear beyond doubt" that the First Circuit "considers [these] proceedings as 'judicial in nature.'" *Middlesex*, 457 U.S. at 433–34; *see, e.g., Lorusso*, 85 So. 3d at 718; *Toney*, 145 So. 3d at 1048. That is all that is required "to warrant federal-court deference." *Middlesex*, 457 U.S. at 434. The district court's refusal to abstain under *Younger* was yet another abuse of discretion.

At bottom, *Pullman* and *Younger* both required the district court to step back while Louisiana's courts resolve the dispositive state-law question through an ongoing judicial process that affords a full forum for any constitutional claim. By refusing to abstain and issuing an injunction anyway, the court stepped outside the range of permissible choices. That

38

error collapses the likelihood-of-success showing and warrants both vacatur and a remand with instructions to stay under *Pullman* or dismiss under *Younger*.

**B. The Union's First Amendment Claim Is Unlikely to Succeed, and the District Court's Contrary Holding Was Profoundly Wrong.**

The Union's First Amendment claim fails on its own terms, and the district court abused its discretion in holding otherwise. The declaratory opinion regulates a conflict-of-interest arrangement—not the Union's ability to organize, advocate, hire lawyers, or fund counsel—and it bars only the conflicted pairing of a Union officer adjudicating cases while Union-funded counsel appears before that tribunal. Any incidental burden on association is justified by compelling interests in impartial adjudication and public confidence, and the declaratory opinion is narrowly tailored to that structural problem.

**1. The First Amendment framework.**

The First Amendment provides that "Congress shall make no law … abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. Though the text of the First

39

Amendment contains no express "freedom of association," the Supreme Court has repeatedly recognized protection of "a corresponding right to associate with others," *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (quotation omitted), and a right not to associate with others, *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878, 892 (2018); *see also, e.g.*, *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647–48 (2000).

But the right to association is not unbounded. Associating, for example, does not provide constitutional cover if it is associating towards a criminal end. *See* 18 U.S.C. § 371 (criminal conspiracy); La. R.S. 14:26 (same). That is because association is "a correlative freedom to engage in group effort toward [First Amendment] ends"—"freedom to speak, to worship, and to petition the government for the redress of grievances." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). That correlative freedom is no less protected for corporate entities, including unions, which also enjoy the "freedom of speech, assembly, and petition." *United Mine Workers*, 389 U.S. at 221; *see Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 342–43, 365 (2010) (citing *NAACP v. Button*, 371 U.S. 415, 428 (1963)).

40

Under that rubric, the Supreme Court has recognized that an individual, a corporation, or a combination thereof have a "right to hire attorneys on a salary basis" when suppression of that right is no more than "indirect restraints" on "free speech, press, petition, or assembly." *United Mine Workers*, 389 U.S. at 221–22 (citing *Bhd. of R. R. Trainmen v. Virginia ex rel. Va. State Bar*, 377 U.S. 1 (1964)). In that line of cases, the "common thread" is that "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment." *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971).

But the Supreme Court has also cabined that right, as the district court recognized. ROA.703–04. It does not, for example, "prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 769 (2018) (quotation omitted); *accord Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.").

41

Under this framework, "[w]hen a state regulation implicates First Amendment rights," courts "must balance those interests against the State's legitimate interest in regulating the activity in question." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991) (regulating lawyer and client press conferences).

States retain an "interest in high standards of legal ethics" and so exercise their "broad power to regulate the practice of law." *United Mine Workers*, 389 U.S. at 222, 225. And a "State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Ohralik*, 436 U.S. at 456 (collecting examples). Nothing in the Constitution, for example, strips States of the power "to take measures to correct the substantive evils of undue influence, overreaching, misrepresentation, invasion of privacy, conflict of interest, and lay interference." *In re Primus*, 436 U.S. 412, 426 (1978); *see Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445 (2015) (States have a "'vital state interest' in safeguarding 'public confidence in the fairness and integrity of the nation's elected judges.'" (quotation omitted)). And the district court seemed to have acknowledged as much. *See* ROA.706–07.

42

**2. Regulation is permissible if it furthers a compelling interest and is drawn with narrow specificity.**

"When a state regulation implicates First Amendment rights," courts "must balance those interests against the State's legitimate interest in regulating the activity in question." *Gentile*, 501 U.S. at 1075 (regulating lawyer and client press conferences). That "balance" is so-called "exacting scrutiny"—a First Amendment cousin to the tiers of scrutiny. *In re Primus*, 436 U.S. at 432 (quoting *Buckley v. Valeo*, 424 U.S. 1, 44–45 (1976)). To satisfy that exacting scrutiny, the State need only have "a subordinating interest which is compelling" and "the means employed in furtherance of that interest" must be "closely drawn to avoid unnecessary abridgment of associational freedoms." *Id.* (quotations omitted); *see, e.g.*, *Ohralik*, 436 U.S. at 459 ("While entitled to some constitutional protection, appellant's conduct is subject to regulation in furtherance of important state interests.").

States that take a sledgehammer to a nut often flunk the narrowness inquiry. There are two seminal examples: In *Button* and in *United Mine Workers*, States sought to ban *all* organizations from retaining attorneys to represent third parties as an impermissible legal

43

solicitation or unauthorized practice of law. *Button*, 371 U.S. at 428–29, 433; *United Mine Workers*, 389 U.S. at 223–25. Similarly, in *Trainmen* and in *United Transportation Union*, States sought to forbid any organization's advising or discussing the selection of lawyers with any individual as an impermissible legal solicitation. *Bhd. of R.R. Trainmen*, 377 U.S. at 4–5; *United Transp. Union*, 401 U.S. at 585–86.

The hypothetical nature of the potential ethical conflicts were central to the *Button* line of cases. *See Button*, 371 U.S. at 443 ("no showing of a serious danger" to justify restriction); *Bhd. of R.R. Trainmen*, 377 U.S. at 6–8 (very distant possibility of harm could not justify a complete prohibition of the Trainmen's efforts to aid one another); *United Mine Workers*, 389 U.S. at 224 ("no indication that the theoretically imaginable divergence between the interests of the union and member ever actually arose"); *United Transp. Union*, 401 U.S. at 584 ("no showing at all" that prohibited conduct was threatened to occur).

Critically, *Button* and its progeny contemplated that direct regulation of an *actual* ethical concern would be constitutional. *See Button*, 371 U.S. at 444 (faulting State for failing "to advance any substantial regulatory interest, in the form of substantive evils flowing

44

from petitioner's activities, which can justify the broad prohibitions which it has imposed"); *Bhd. of R.R. Trainmen*, 377 U.S. at 6 (State's restriction not justified when practice does not "threaten the moral and ethical fabric of the administration of justice"); *United Mine Workers*, 389 U.S. at 223–25 (State possessed an "interest in high standards of legal ethics," but no improper conduct had occurred warranting an infringement of the right).

Put simply: The Supreme Court has "extended associational rights only when the proposed practice of law wouldn't raise ethical concerns." *Capital Associated Indus., Inc. v. Stein*, 922 F.3d 198, 206 (4th Cir. 2019); *see Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1387 (7th Cir. 1992) (declining to apply heightened scrutiny because there was no deprivation of associational rights).

### 3.  The declaratory opinion addresses a concrete, narrowly defined ethics conflict and advances compelling State interests.

Louisiana's Code of Governmental Ethics prohibits a specific, structural, and economic-based conflict of interest: "La. R.S. 42:1111(E)(1) prohibits the Union from receiving dues for assisting Union members in transactions or in appearances in connection with

transactions involving the Civil Service Board when an officer or trustee of the Union serves as an appointed member of the Civil Service Board." ROA.38. Yet the trial court held the State lacks a "compelling interest" and the Board of Ethics' decision was not "narrowly tailored"—what the court called "exacting scrutiny." Neither are true.

*Compelling interest.* The district court incorrectly determined that Louisiana's interest in enforcing its constitutionally-mandated Code of Governmental Ethics was "not compelling enough." ROA.707. Two problems arise with that conclusion. First, that ignores that the Code of Ethics (and, by extension, the Board of Ethics) exists to ensure

> that elected officials and public employees be independent and impartial; that governmental decisions and policy be made in the proper channel of the governmental structure; that public office and employment not be used for private gain other than the remuneration provided by law; and that there be public confidence in the integrity of government.

La. R.S. 42:1101(B); *see also* La. Const. art. X., § 21 (mandating an ethics code); *Duplantis*, 782 So. 2d at 586.

Second, it belies the reality that those interests are "impaired" by conflicts "between the private interests of an elected official or a public employee and his duties," La. R.S. 42:1101(B), and that public officials— and especially adjudicators—"must remain completely impartial and free

from any potential conflict of interest," *Augustine v. Avoyelles Par. Police Jury*, No. CIV.A. 06-1662-A, 2007 WL 3231718, at *3 (W.D. La. Oct. 30, 2007); *see Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001) ("Trial before 'an unbiased judge' is essential to due process." (quoting *Johnson v. Mississippi*, 403 U.S. 212, 216 (1971))); *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam) ("Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" (quotation omitted)). That is especially true given "public confidence in the process and result" matters where the State is the adjudicator. *See Tex. Tribune v. Caldwell County*, 121 F.4th 520, 530 (5th Cir. 2024) (quotation omitted). Louisiana thus has a longstanding, compelling interest in maintaining "high standards of legal ethics," *United Mine Workers*, 389 U.S. at 225, and ensuring due process minimums like "an impartial jury free from outside influences," *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966).

*Actual conflict.* Yet on the district court's telling, the State's very real appearance-of-impartiality concerns are nothing more than "a theoretical or tangential harm." ROA.707. That is because, it said, the

Board of Ethics did not show (1) "that any Ethics Board member who concurrently serves or served as a member of a union representing individuals appearing before the Ethics Board has been swayed by his or her concurrent roles" or (2) "that public confidence in the Ethics Board's proceedings or decisions has dwindled." *Id.* (Presumably, the court meant the Civil Service Board.) The court, too, suggested that the Board of Ethics needed to prove (3) that Civil Service Board decisions drive the Union's membership *and* (4) that drive was "to such a degree that it could affect the salary of Union officers to the extent that the Union office could be biased in the Civil Service Board proceedings." ROA.708. Respectfully, that misreads *Button* and its progeny, misunderstands the function of ethics rules, and undermines Louisiana's ability to enforce any ethical standards in its government.

The *Button* line of cases draws the constitutional line at sham state statutes with an underlying aim to undercut lawyering for disfavored groups. *See, e.g., Button,* 371 U.S. at 428–29 (State sought to ban organization from retaining attorney as impermissible legal solicitation or unauthorized practice of law); *United Mine Workers,* 389 U.S. at 223–25 (similar); *Bhd. of R. R. Trainmen,* 377 U.S. at 4–5 (State attempted to

48

prohibit organization from discussing the selection of lawyers with individuals as impermissible solicitation); *United Transp. Union*, 401 U.S. at 585–86 (similar). The freedom of association takes a back seat, however, when States have "a subordinating interest which is compelling" and the "means employed in furtherance of that interest are closely drawn to avoid unnecessary abridgment of associational freedoms." *In re Primus*, 436 U.S. at 432 (quotations omitted). That is this case: The declaratory opinion applies the State's Ethics Code to prevent an *actual conflict of interest* between the Union's leadership and the Civil Service Board.

Consider the facts as the Union framed them. *See* ROA.43. As a paid officer of the Union, Burkett and other leaders offer a benefit package for their members, including paid legal representation before the Civil Service Board. In a real way, the Union (through Burkett) selects the representation and has a vested interest in that representation prevailing (otherwise, why offer the benefit?). At the same time, Burkett seeks to sit as a purportedly neutral arbiter on the Civil Service Board. That alignment creates a structural, ongoing conflict—not a one-off recusal problem—because the Union's financial and institutional

49

interests are directly aligned with the advocates appearing before Burkett. In the Union's view, Burkett could still investigate and adjudicate a complaint against a non-Union supervisor prosecuted by a fellow Union member with counsel the Union both funds and helps select. *See id.* Do the non-member's due process rights fall by the wayside?

That scenario risks both actual bias and the untoward appearance that a decisionmaker is advancing his organization's interests. Few could envision a more real and "professionally reprehensible conflict[] of interest." *Button*, 371 U.S. at 443; *see Glazer v. Comm'n on Ethics for Pub. Emps.*, 431 So. 2d 752, 756 (La. 1983) (explaining a conflict of interest exists—both in actuality and in perception—when an official serves two masters). Failing to credit that structural conflict was an abuse of discretion under any standard.

Even setting aside the actual conflict, this case embodies the phrase "appearance of impropriety." Ethics codes exist precisely to foreclose situations that erode confidence in neutral adjudication—they "protect[] against conflicts of interest which may give rise to the appearance of impropriety." *In re Beychok*, 495 So. 2d 1278, 1281 (La. 1986); *Caliste v. Cantrell*, 329 F. Supp. 3d 296, 319 (E.D. La. 2018) ("[I]t is not only

50

important that justice be done; it is equally important that justice appear to be done. The appearance of justice is vital to perpetuation of the rule of law, a concept upon which our society is based."), *aff'd*, 937 F.3d 525 (5th Cir. 2019). An actual conflict is thus unnecessary if there is a "public perception of a conflict of interest." *In re Marceaux*, 96-1215 (La. App. 1 Cir. 2/14/97), 689 So. 2d 670, 673 ("His service on a public board that controls a business with which his employer contracts creates a public perception of a conflict of interest, which is what the code is designed to prevent."). Ethics rules thus prevent "situations that tend to create a perception of conflict of interest … by delineating situations that present too great a danger of a conflict of interest occurring." *Beychok*, 495 So. 2d at 1281. This case is exactly that—a Union officer adjudicating cases in which the Union funds and helps select the advocate. The district court's refusal to credit that appearance of bias was an abuse of discretion.

The district court's approach would also put the Board of Ethics in the bizarre posture of waiting for a proven breach—for example, Burkett demonstrably favoring a Union member in a Civil Service Board proceeding—before acting. But the point of the ethics code is *prevention*, not post hoc punishment. It exists to head off conflicts of interest *before*

they ripen into harm. *See Beychok*, 495 So. 2d at 1281 ("The primary objective of the code is to prevent [] the actuality of conflicts of interest[.]"). Waiting until a conflict influences decisionmaking is no way to run an ethical railroad.

*Narrowly tailored.* The declaratory opinion targets the conflict narrowly and directly. The Board of Ethics expressly explained that the Union remains free to fund counsel for its members even if a regular, non-officer Union member sits on the Civil Service Board. *See* ROA.41. The problematic conflict is when a Union "officer, director, trustee, partner, or employee" simultaneously adjudicates cases while the Union funds and helps select counsel appearing before that tribunal. *See id.* The First Circuit confirmed this narrow scope, explaining that La. R.S. 42:1111(E) "does not prohibit the Union from paying a third-party attorney to represent its members," and that the prohibition is "only triggered" by the appointment of a Union officer (not a rank-and-file member) to the Civil Service Board. *In re Jefferson Par. Firefighters Ass'n*, 2025 WL 2177973, at \*4.

Yet the district court deemed the opinion not narrowly tailored— even while acknowledging it "does not prohibit the Union from paying its

members' representation under all circumstances." ROA.708. That conclusion was an abuse of discretion. As alternatives, the court suggested "a recusal requirement or some other system to ensure that the Union officer does not participate in proceedings involving this hypothetical and attenuated conflict." ROA.709. But that policy suggestion is an inferior fit for a host of reasons: it deters only after the conflict has arisen, invites case-by-case gamesmanship, produces unpredictable panel composition, and fails to remedy the systemic appearance-of-impropriety when an adjudicator's organization bankrolls the advocacy before him. Not to mention it is a policy choice best left to Louisiana and its courts. By contrast, the Board of Ethics' prophylactic rule avoids those workability problems and advances the State's compelling interests with precision.

In short, the Union's merits theory miscasts a neutral conflicts rule as an infringement on freedom of association. But associational rights simply do not extend to arrangements that raise actual ethical concerns. *Button*, 371 U.S. at 443–44; *see, e.g., Cap. Associated Indus.*, 922 F.3d at 206. Any burden on association caused by the Board of Ethics' application of La. R.S. 42:1111(E)(1) is thus incidental and "only marginally

53

affect[s] … First Amendment concerns." *Ohralik*, 436 U.S. at 459; *Cap. Associated Indus.*, 922 F.3d at 206. On this record, the Union is not likely to prevail on its First Amendment claim, and the district court's contrary ruling was legal error and an abuse of discretion.

*    *    *

The Union fails on likelihood of success on the merits, and this Court's analysis can end there. Accordingly, this Court should vacate the preliminary injunction and remand with instructions to either stay under *Pullman* or dismiss under *Younger*.

## II.    THE REMAINING FACTORS FAVOR A STAY.

Nor do the other factors favor the Union. After the likelihood of success, irreparable injury is the "most critical" factor in the stay inquiry. *E.T.*, 19 F.4th 764 (quotation omitted). For a State (and its officials), its "interest and harm merge with that of the public." *Veasey*, 870 F.3d at 391.

*Irreparable harm.* Enjoining a constitutionally-mandated ethics regime inflicts ongoing, noncompensable harm on the State and the public. "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its

54

laws." *E.T.*, 19 F.4th at 770 (cleaned up). The same logic applies with full force to Louisiana's Code of Governmental Ethics, to the Board of Ethics' final, binding declaratory opinion issued under it, and now the Louisiana First Circuit's decision interpreting it. Every day the injunction remains on the books, Louisiana cannot avert an actual, structural, and economic-based conflict on an adjudicative body, undermining impartiality and public confidence, *see supra* Section I.B.3—harms that cannot be remedied by money damages or post hoc relief.

The Union, however, faces no irreparable harm absent the injunction. The Union claimed below only that the "loss of First Amendment freedoms, for even minimal period of time, unquestionably constitutes irreparable injury." ROA.144 (quotation omitted). But there is no cognizable First Amendment injury here. *See supra* Section I.B. The declaratory opinion does not prohibit the Union from organizing, advocating, or funding counsel; it forbids only the conflicted pairing of a Union officer/trustee adjudicating cases while Union-funded, Union-selected counsel appears before the same tribunal. This factor favors the Board Members.

*Public Interest and Balance of Equities*. Here, the public interest strongly favors upholding Louisiana's neutral Governmental Code of Ethics. The Legislature has declared that public confidence, impartiality, and independence in government decisionmaking are paramount, and that ethics rules must protect against conflicts of interest. *Supra* Section I.B.3; *see In re Arnold*, 2007-2342 (La. App. 1 Cir. 5/23/08), 991 So. 2d 531, 536 (Code of Governmental Ethics is meant "to further the public interest by ensuring that the law protects against conflicts of interest on the part of Louisiana's public officials and state employees by establishing ethical standards to regulate the conduct of those persons."); *Ellis v. La. Bd. of Ethics*, 2017-0385 (La. App. 1 Cir. 11/1/17), 233 So. 3d 722, 729. In fact, "public interest … *requires* that the law protect against such conflicts of interest and that it establish appropriate ethical standards with respect to the conduct of elected officials and public employees without creating unnecessary barriers to public service." La. R.S. 42:1101(B) (emphasis added). Enforcement of the Code of Ethics ensures the proper operation of Louisiana's democratic government by preventing situations—like this one—that create perceptions of conflicts

of interest. *See Marceaux*, 689 So. 2d at 673. This factor also favors the Board Members.

Moreover, this injunction necessarily impedes the State's ability to enforce its laws. *See, e.g., E.T.*, 19 F.4th at 770 ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." (cleaned up)). That principle applies here to the Code of Governmental Ethics and the Board's binding opinion. Accordingly, even if the Union could show a First Amendment violation (it cannot), the balance of harms still favors preserving Louisiana's duly-enacted ethics regime during the appeal. *See NetChoice, LLC v. Fitch*, 606 U.S. ----, 145 S. Ct. 2658, 2658 (2025) (Mem.) (Kavanaugh, J., concurring in the denial of an application to vacate stay) ("[T]he Mississippi law is likely unconstitutional. Nonetheless, because NetChoice has not sufficiently demonstrated that the balance of harms and equities favors it at this time, I concur in the Court's denial of the application for interim relief.").

On this record, Louisiana's interests in impartial adjudication and public confidence outweigh the Union's preference to maintain a

conflicted arrangement before the Civil Service Board. The district court's contrary assessment was incorrect.

## CONCLUSION

This Court should vacate the injunction. Additionally, this Court should remand with instructions to either stay proceedings under *Pullman* for the duration of the state-court appeal or dismiss the case under *Younger*.

Respectfully submitted,

ELIZABETH B. MURRILL
Attorney General of Louisiana

J. BENJAMIN AGUIÑAGA
  Solicitor General
ZACHARY FAIRCLOTH
  Principal Deputy Solicitor General

*/s/ Kelsey L. Smith*
KELSEY L. SMITH
  Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 428-7432
SmithKel@ag.louisiana.gov

*Counsel for Defendants-Appellants*

## CERTIFICATE OF SERVICE

I certify that on October 2, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

/s/ Kelsey L. Smith
KELSEY L. SMITH

# CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this BRIEF complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2) because it contains 11,180 words; and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016 (the same program used to calculate the word count).

*/s/ Kelsey L. Smith*
KELSEY L. SMITH

Dated:    October 2, 2025